PRESENT: All the Justices

MARBLE TECHNOLOGIES, INC., ET AL.

v.  Record No. 140972

STEPHEN M. MALLON, ET AL.

OPINION BY
JUSTICE S. BERNARD GOODWYN
June 4, 2015

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Louis R. Lerner, Judge

In this appeal, we consider whether an express easement created by a 1936 deed was stationary or moved with the changing mean high water line.

Background

In 1936, the Grand View Development Corporation dissolved and distributed most of a large tract of real estate in what is now the White Marsh Beach area of Hampton, Virginia, to its shareholders. The deed distributing the land stated

> The parties to this deed take the above mentioned and described property subject to an easement on a twenty foot road as designated on the map recorded with this deed, which easement is to run with the land and from the parties hereto to their assigns and heirs but it is expressly stated that the said twenty foot road shall not become a public road, but merely an easement for the parties, their heirs or assigns to the deed.

The referenced map includes two parallel lines labeled "Twenty Foot Road" (the easement) crossing the lots that fronted the Chesapeake Bay. The map depicts "S 20-00 W" as the southern starting point of the easement. Following the easement from south to north, a place where the easement makes a slight bend

is labelled "980.0' S29.55W."  Thereafter, between the parallel lines depicting the road is written "Along Present Mean High Water."[*]  A "Stake" is depicted at the northern terminus of the easement.

Due to changes in the sand and water levels since 1936, the easement, as located on the map, is now under the Chesapeake Bay.  Because of a dispute over whether the easement still exists, Stephen M. Mallon, Helen G. Mallon, Arne Hasselquist, Lauren Hasselquist and Grandview Islanders, LLC (collectively, "Mallon"), landowners of some of the properties conveyed by the 1936 deed, sought a declaratory judgment in the Circuit Court of the City of Hampton.  They claim that the location of the express easement moved with the mean high water line as the beach eroded.

Respondents Marble Technologies, Inc. and Sebastian Plucinski (collectively, "Marble") filed an answer.  They assert that the easement has not moved and the land where the

---

[*] The National Oceanic and Atmospheric Administration defines "mean high water line" as the location on the map where the land meets the average "maximum height reached by a rising tide" over the "specific 19-year period adopted by the National Ocean Services as the official time segment over which tide observations are taken."  United States Department of Commerce, Tide and Current Glossary 11, 15, 17 (2000), available at http://tidesandcurrents.noaa.gov/publications/glossary2.pdf (last visited June 2, 2015).

easement was located is now on the bottom of the Chesapeake Bay, resulting in extinguishment of the easement.

The circuit court granted several opportunities for the addition of new parties. On November 30, 2012, upon joint motion of the parties, the court ordered that the style of the case be amended to add additional parties who had an interest in the suit. On March 12, 2013, the court granted Marble's motion for leave to add additional defendants to its counterclaim, cross-claim and third party complaint. On April 3, 2013, despite objection by Mallon, the circuit court granted Marble's motion for a continuance of the trial to add necessary parties.

Although the amended complaint, counterclaim, cross-claim and third party complaint include more than forty individuals and entities as parties and no additional parties were added after the April 3, 2013 continuance, approximately six months later, Marble asked for another continuance of the trial so that necessary parties could be added. The court denied the request for a continuance and proceeded with the trial on October 30, 2013. Prior to trial, the parties stipulated that not all of the successors-in-title of the properties conveyed in the deed were parties to this action.

At trial, the circuit court considered the issue of whether the express terms of the easement were such that the

3

easement moved with the changing coastline. The court held that the deed and map were ambiguous and considered parol evidence to ascertain the intent of parties to the deed and map. The parties presented conflicting expert testimony on whether the map's drafter intended to have the easement remain stationary or move with the changing coastline.

The circuit court ruled that Mallon has a variable express easement that moves with the mean high water line. Marble appeals.

Marble assigns error as follows:

> 1. The lower court erred in holding a trial and entering a final order without first joining as necessary parties all the landowners that would be affected by any declaratory judgment rendered.

> 2. The lower court erred in holding that the twenty foot easement on the road established in 1936 was not extinguished by the subsequent erosion of the shoreline.

> 3. The lower court erred in finding the relevant deed and plat ambiguous and in allowing Plaintiffs' expert to offer parole [sic] evidence regarding the intent of the drafters of those documents.

## Analysis

Marble argues that the circuit court erred by failing to join all necessary parties and rendering final judgment when all parties who owned property that was part of the 1936 conveyance were not before the court. Mallon argues that the

4

circuit court did not err in deciding the case without adding additional parties.

Concerning the issue of necessary parties, we have stated that "'[a]ll persons interested in the subject matter of a suit and to be affected by its results are necessary parties.'" Michael E. Siska Revocable Trust v. Milestone Dev., LLC, 282 Va. 169, 173, 715 S.E.2d 21, 23 (2011) (quoting Bonsal v. Camp, 111 Va. 595, 598, 69 S.E. 978, 979 (1911)). Generally, a court should only decide a case on its merits if all necessary parties are before it. Id. at 173-81, 715 S.E.2d at 23-27. However, the necessary party doctrine does not implicate subject matter jurisdiction. Id. at 176-81, 715 S.E.2d at 25-27. As relates to necessary parties, a circuit court has discretion to take steps to correct defects and to decide whether to exercise its discretion to permit the case to continue with the existing parties. Id. We review a circuit court's decision to allow a matter to proceed without necessary parties for an abuse of discretion. Id.

A court can choose to proceed without a necessary party if (1) it is "practically impossible" to join a necessary party and the missing party is represented by other parties who have the same interests; (2) the missing party's interests are separable from those of the present parties, so the court can rule without prejudicing the missing party; or (3) a necessary

5

party cannot be made a party, but the court determines that the party is not indispensable. Id. at 176, 179-80, 715 S.E.2d at 25, 27 (citation and internal quotation marks omitted); Rule 3:12(c). With the numerous and varied parties added to the action, the multiple opportunities the court provided the litigants to add parties and no claim that any of the allegedly missing parties were indispensable, we conclude that the circuit court did not abuse its discretion in allowing the case to proceed to trial with the parties it had before it.

Marble contends that the deed and map unambiguously designated the easement as existing at a specific location and that the easement has not moved with the erosion of the land. Moreover, Marble claims that because the deed and map unambiguously dictated that the easement was stationary, the circuit court erred in considering parol evidence.

Mallon asserts that the court correctly allowed parol evidence to interpret the deed and map because the map is ambiguous about whether the easement moves with the mean high water line. They claim that the easement has moved over time to follow the changing mean high water line.

We review de novo a circuit court's interpretation of words in a deed. Beeren & Barry Invs., LLC v. AHC, Inc., 277 Va. 32, 37, 671 S.E.2d 147, 150 (2009). If the language in a deed creating an easement is unambiguous, courts should

6

interpret the deed solely based on the deed's language.

Pyramid Dev., L.L.C. v. D&J Assocs., 262 Va. 750, 754, 553

S.E.2d 725, 728 (2001).  "Only when the language is ambiguous

may a court look to parol evidence, or specifically, to the

language employed in light of the circumstances surrounding the

parties and the land at the time the deed was executed" in

order to discern the parties' intent.  Id. (citation and

internal quotation marks omitted).

In this case, the deed stated that the property recipients

took their property "subject to an easement on a twenty foot

road as designated on the map recorded with this deed."  The

accompanying map depicts "S 20-00 W" as the southern end of the

easement.  Additionally, it denotes a point where the easement

makes a slight bend as "980.0' S29.55W."  It designates the

easement as running "Along Present Mean High Water."  The map

notes the location of a "Stake" at the northern end of the

designated "Twenty Foot Road."

Mallon claims that the designation "Along Present Mean

High Water" means that the location of the express easement

moves with the movement of the mean high water line.  We must

discern the meaning of "present."  Webster's Third New

International Dictionary defines "present" as "now existing or

in progress: begun but not ended: now being in view, being

dealt with, or being under consideration: being at this time:

not past or future: contemporary."  Webster's Third New International Dictionary 1793 (1993); see also Black's Law Dictionary 1374 (10th ed. 2014) (defining "present" as "now existing; at hand").

The map depicts the easement as existing "Along Present Mean High Water," meaning the line as it existed in 1936 when the map was created.  (Emphasis added.)  This is confirmed by the fact that the map utilizes metes and bounds and a stationary marker to show the easement's location.  Thus, we hold that the map is unambiguous regarding the location of the easement.  The metes and bounds descriptions and the stationary markers dispel any claim of ambiguity.  Nothing on the map or in the deed indicates that the easement was to move with the changing coastline.  Compare Lipke v. Windy Gates, LLC, 20 LCR 440, 448 (Mass. Land Ct. 2012) (finding beach access easements were not extinguished because the easements were described in "non-specific terms of the sort that can readily accommodate a changing seashore" (emphasis added)), aff'd, 85 Mass. App. Unpub. LEXIS 254, at *11 (2014) ("[A]s the Land Court judge describes, the easements were granted using nonspecific terms, which accommodate a changing landscape." (emphases added)), with Bubis v. Kassin, 733 A.2d 1232, 1234, 1239 (N.J. Super. Ct. App. Div. 1999) (indicating that an express private easement over a "certain strip of land . . . as shown on [a]

Map . . . and described as follows:  Bounded on [all sides]"
did not move inland with the mean high water line despite the
fact that the mean high water line completely eclipsed the
encumbered strip of land (emphases added)); see also Tysen v.
Cedar Grove Beach Corp., 188 N.Y.S. 361, 363 (N.Y. App. Div.
1921) ("[T]he washing away of the original locus in quo by
erosion would seem to make the alleged easement . . . very
doubtful and shadowy.").

Because the deed and map are unambiguous, there was no
need for the circuit court to review evidence beyond the
documents themselves to interpret them.  Therefore, the circuit
court erred in considering parol evidence.

The easement never moved from the mean high water line as
it existed in 1936.  The beach has eroded in the meantime, and
the land where the easement was once located is now under the
Chesapeake Bay and cannot serve as a road.  Thus, the express
easement has been extinguished.  See Corbett v. Ruben, 223 Va.
468, 472, 290 S.E.2d 847, 849 (1982) (holding that courts may
presume an easement by grant without a term "was intended to be
terminated when the purpose for which it was created can no
longer be served"); McCreery v. Chesapeake Corp., 220 Va. 227,
233, 257 S.E.2d 828, 831 (1979) (easement was extinguished by
cessation of the purpose for which it was granted); Hudson v.
American Oil Co., 152 F. Supp. 757, 765 (E.D. Va. 1957), aff'd

on other grounds, 253 F.2d 27 (4th Cir. 1958) (stating that an easement can be extinguished by an Act of God); see generally Code §§ 28.2-1200; 28.2-1202 (dictating that in most circumstances, when land is below a bay's mean low-water mark and thus is on the bed of that bay, it is property of the Commonwealth).

## Conclusion

Accordingly, for the reasons stated, we reverse the judgment of the circuit court and hold that the express easement created by the 1936 deed has been extinguished.

Reversed and final judgment.